UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re: Jeffrey T Okerman

Debtor(s).

Case No. 14-11739
Chapter 13

## LOSS MITIGATION STATUS REPORT

This Loss Mitigation Status Report is submitted pursuant to the court's Loss Mitigation Program Procedures.

### PART I — GENERAL INFORMATION

a. Full description of the Property:
214 Marpe Rd, Johnsonville, NY 12094

b. Name and address of Creditor:

Shellpoint Mortgage Servicing
15 S. Main Street
Suite 600
Greenville SC 29601

Has Creditor filed a proof of claim?
☑ Yes  ☐ No

Name, address, and telephone number of Creditor's attorney:
Scott A. Sydelnik, Esq.
Davidson Fink LLP
28 East Main Street
Suite 1700
Rochester, New York 14614
(585) 760-2348

c. Name and address of Additional Creditor:

Has Additional Creditor filed a proof of claim?
☐ Yes  ☐ No

Name, address, and telephone number of Additional Creditor's attorney:

## PART II — LOSS MITIGATION PROGRAM

a. On _____May 11_____, 20_15_, a Loss Mitigation Request was filed by:

   [x] Debtor(s).          [ ] Other party: _____.
   [ ] Creditor.           [ ] The court raised the possibility of Loss Mitigation.

b. Loss Mitigation Order:

   [x] A Loss Mitigation Order was entered on _____June 2_____, 20_15_.
   [x] The Loss Mitigation Order was served on _____June 2_____, 20_15_.

c. At this time, the Debtor(s) is/are:

   [ ] making on-going post-petition monthly mortgage payments in the amount of $ _____.
   [x] not making on-going post-petition monthly mortgage payments.

d. If the underlying bankruptcy case is one filed under chapter 12 or 13, has a plan been confirmed?

   [x] Yes    [ ] No

e. Creditor served a Request for Information and Documents on _____October 5_____, 20_15_.
   Debtor(s) served a Response to the Creditor's Request on _____October 8_____, 20_15_.

   [x] All Information and Documents have been produced.
   [ ] The following Information and Documents are still outstanding:

   _____
   _____
   _____.

f. Additional Creditor served a Request for Information and Documents on _____, 20____.
   Debtor(s) served a Response to the Additional Creditor's Request on _____, 20____.

   [ ] All Information and Documents have been produced.
   [ ] The following Information and Documents are still outstanding:

   _____
   _____
   _____.

g. Debtor(s) served a Request for Information and Documents on _____, 20____.
   Creditor served a Response to the Debtor(s)' Request on _____, 20____.
   Additional Creditor served a Response to the Debtor(s)' Request on _____, 20____.

   [ ] All Information and Documents have been produced.
   [ ] The following Information and Documents are still outstanding:

   _____
   _____
   _____.

h. The Loss Mitigation Parties have participated in __6__ Loss Mitigation Session(s) and:

- ☒ A resolution has been reached.
- ☐ A resolution has not been reached because:

  A permanent loan modification has been offered

i. Prior Loss Mitigation Status Report (if applicable):

   A Prior Loss Mitigation Status Report was submitted on ___December 18___, 20 _15_.

   A Prior Loss Mitigation Status Report was submitted on ___October 13___, 20 _15_.

   A Prior Loss Mitigation Status Report was submitted on ___September 21___, 20 _15_.

j. The Loss Mitigation Period is scheduled to terminate on _____, 20____.

k. Additional information relevant to the Loss Mitigation Parties reaching a final resolution:

## PART III — OTHER MORTGAGES/LIENS AGAINST THE PROPERTY

Dated: 2/17/16

Name  Scott A. Sydelnik, Esq.
Firm Davidson Fink LLP
Attorney(s) for Debtor(s)/Creditor
Address  28 East Main St. Suite 1700, Rochester NY
Telephone Number 585-760-2348
Email Address ssydelnik@davidsonfink.com
N.D.N.Y. Bar Roll Identification No. 514635

P.O. BOX 1410  
TROY, MI 48099-1410  
RETURN SERVICE REQUESTED

 **Shellpoint** Mon - Thurs: 8:00AM-6:00PM  
Fri: 8:00AM-5:00PM

Mortgage Servicing  
Phone Number: 866-825-2174  
Fax: 866-467-1187  
e-Mail: Lossmitigation@shellpointmtg.com



JEFFERY OKERMAN  
C/O PAULA M BARBARUOLO  
12 CORNELL ROAD  
LATHAM NY 12110-1407

| Loan Number: | |
|---|---|
| Principal Balance: | $140,081.81 |
| Property Address: | 214 Marpe Rd<br>Johnsonville, NY 12094 |

01/28/2016

Dear Jeffery Okerman:

**Congratulations, you are eligible for a Loan Modification, which will permanently change the terms of your mortgage!** If you comply with the terms of the required Trial Period Plan, we will modify your mortgage loan and may waive all prior late charges that remain unpaid.

The enclosed Modification Agreement ("Loan Modification Agreement") reflects the proposed terms of your modified mortgage.

**STEP 1   COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE**

**To Accept This Offer:**
- ☑ **Sign and return** both original versions of the Loan Modification Agreement back to us in the enclosed, pre-paid envelope by 2/11/2016. If you do not send both signed original versions of the Loan Modification Agreement by the above date, you must contact us if you still wish to be considered for a modification.
  - If the Loan Modification Agreement has notary provisions at the end, you must sign both original versions before a notary public and return the notarized original versions to us.
  - We encourage you to make a copy of all documents for your records.

**STEP 2   CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

- ☑ **Make all remaining trial period payments** on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the trial period payment amount required, your mortgage may not be able to be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

Don't delay—take advantage of this great offer by 2/11/2016.

Sincerely,

Loss Mitigation Department  
Shellpoint Mortgage Servicing  
866-825-2174

*Attachments: Summary of Your Modified Mortgage, Two original versions of the Modification Agreement*

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

## SUMMARY
Here is a summary of your modified mortgage.

**UNPAID PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, previous deferred amounts, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement in Section 3.C. If it is not being adjusted, the existing interest rate on your mortgage loan will be applied to your modified loan as noted in the attached loan modification.

**TERM EXTENSION.** To reduce your mortgage payment, we will extend the term of your mortgage. This means we will spread your payments over a longer period.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Shellpoint Mortgage Servicing will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that [Servicer] must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $527.71. This amount is included in the loan payment noted in Section 3.C. of the enclosed Modification Agreement; you do not need to remit this amount separately.

**PAYMENT TERMS.** The enclosed Modification Agreement includes a payment schedule in Section 3.C. showing your payment plan for the life of your modified loan after the trial period.

**FEES.** There are no fees or other charges for this modification.

**LOAN MODIFICATION AGREEMENT.** Please read the enclosed Loan Modification Agreement carefully and make sure that you understand it. If you have any questions, please contact us at 866-825-2174.

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. 

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

New York City:

New York City Consumer Affairs license number 1471002.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

New York City:

Número de licencia 1471002 de Asuntos del Consumidor de la Ciudad de Nueva York.

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoría de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio. Hay consejería para los uniformados disponible de Military OneSource y de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.

Upon recording return to:
Shellpoint Mortgage Servicing
55 Beattie Place Suite 110 (MS 157)
Greenville, SC 29601
Telephone: 866-825-2174
Loan Number: 0568481057
NMLS #: 3013



[Space Above This Line For Recording Data]

# MODIFICATION AGREEMENT

Borrower ("I"):  Jeffery Okerman
Lender or Servicer ("Lender"): Shellpoint Mortgage Servicing. ("Shellpoint")
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 02/01/2007
Loan Number: 0568481057
Property Address ("Property"): 214 Marpe Rd  Johnsonville, NY 12094

If my representations and covenants in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return original versions of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:
   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. The Property has not been condemned.
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

---

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MODIFICATION AGREEMENT           (page 1 of 6 pages)

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/01/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 03/01/2016.

   A. The Maturity Date will be: 02/01/2056.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $169,460.36 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of 6.75% will begin to accrue on the New Principal Balance as of 02/01/2016 and the first new monthly payment on the New Principal Balance will be due on 03/01/2016. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 6.75% | 02/01/2016 | $1,022.45 | $527.71 May adjust periodically | $1,550.16 May adjust periodically | 03/01/2016 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

MODIFICATION AGREEMENT        (page 2 of 6 pages)



D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENTS OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THE LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN IF YOU OBTAIN REFINANCING FROM THE LENDER.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

MODIFICATION AGREEMENT                    (page 4 of 6 pages)



M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

<u>Space Below This Line For Individual Acknowledgement</u>

BORROWER _____(Seal)  COBORROWER_____(Seal)

Signed, acknowledged and delivered in the presence of:

Witness _____ (Seal)  Witness_____(Seal)

State of_____
County of_____

I certify that the following person (s) _____ and _____ personally appeared before me this day, and (_____ I have personal knowledge of the identity of the principal (s) ) (_____ I have seen satisfactory evidence of the principal's identity, by a current state or federal identification. (_____ credible witness has sworn to the identity of the principal (s) ) ; each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

Witness my hand and official seal, this _____ day of _____, 20___.

Notary Signature_____ (Seal)

Witness_____ (Seal)

Typed/printed name:_____(Official Seal)
Notary Public, State of: _____
(VA Notaries) Reg. No.: _____
My Commission Expires:_____

<u>Space Below This Line For Corporate Acknowledgement</u>

Authorized Signer (Lender)Title _____ (Seal)
Mortgage Electronic Registrations Systems, Inc., as nominee for Shellpoint  Its successors and assigns ;
Title_____ (Seal)

Signed, acknowledged and delivered in the presence of:

State of_____
County of_____

I certify _____ personally appeared before me this day and acknowledged that he or she is an authorized signer for New Penn Financial dba Shellpoint Mortgage Servicing. I have personal knowledge of the identity of said officer, acknowledging to me that he or she voluntarily signed the foregoing document on behalf of the corporation for the purposes stated therein and in the capacity indicated.

Witness my hand and official seal, this _____ day of _____, 20___.

Notary Signature_____ (Seal)

Witness_____ (Seal)

Typed/printed name:_____(Official Seal)
Notary Public, State of: _____
(VA Notaries) Reg. No.: _____
My Commission Expires:_____

MODIFICATION AGREEMENT        *(page 6 of 6 pages)*

Upon recording return to:
Shellpoint Mortgage Servicing
55 Beattie Place Suite 110 (MS 157)
Greenville, SC 29601
Telephone: 866-825-2174



[Space Above This Line For Recording Data]

# MODIFICATION AGREEMENT

Borrower ("I"): Jeffery Okerman
Lender or Servicer ("Lender"): Shellpoint Mortgage Servicing. ("Shellpoint")
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 02/01/2007
Loan Number: 0568481057
Property Address ("Property"): 214 Marpe Rd  Johnsonville, NY 12094

If my representations and covenants in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return original versions of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:
    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. The Property has not been condemned.
    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

---

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/01/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 03/01/2016.

   A. The Maturity Date will be: 02/01/2056.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, ("Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $169,460.36 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. Interest at the rate of 6.75% will begin to accrue on the New Principal Balance as of 02/01/2016 and the first new monthly payment on the New Principal Balance will be due on 03/01/2016. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 6.75% | 02/01/2016 | $1,022.45 | $527.71 May adjust periodically | $1,550.16 May adjust periodically | 03/01/2016 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.



D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENTS OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THE LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN IF YOU OBTAIN REFINANCING FROM THE LENDER.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

MODIFICATION AGREEMENT                    (page 4 of 6 pages)



M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Space Below This Line For Individual Acknowledgement
---

BORROWER _____(Seal)   COBORROWER_____(Seal)

Signed, acknowledged and delivered in the presence of:


Witness _____ (Seal)  Witness_____(Seal)

State of_____
County of_____

I certify that the following person (s) _____ and _____ personally appeared before me this day, and (_____ I have personal knowledge of the identity of the principal (s) ) (_____ I have seen satisfactory evidence of the principal's identity, by a current state or federal identification. (_____ credible witness has sworn to the identity of the principal (s) ) ; each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

Witness my hand and official seal, this _____ day of _____, 20___.

Notary Signature_____ (Seal)

Witness_____ (Seal)

Typed/printed name:_____(Official Seal)
Notary Public, State of: _____
(VA Notaries) Reg. No.: _____
My Commission Expires:_____

Space Below This Line For Corporate Acknowledgement
---

Authorized Signer (Lender)Title _____ (Seal)
Mortgage Electronic Registrations Systems, Inc., as nominee for Shellpoint  Its successors and assigns ;
Title_____ (Seal)

Signed, acknowledged and delivered in the presence of:

State of_____
County of_____

I certify _____ personally appeared before me this day and acknowledged that he or she is an authorized signer for New Penn Financial dba Shellpoint Mortgage Servicing. I have personal knowledge of the identity of said officer, acknowledging to me that he or she voluntarily signed the foregoing document on behalf of the corporation for the purposes stated therein and in the capacity indicated.

Witness my hand and official seal, this _____ day of _____, 20___.

Notary Signature_____ (Seal)

Witness_____ (Seal)

Typed/printed name:_____(Official Seal)
Notary Public, State of: _____
(VA Notaries) Reg. No.: _____
My Commission Expires:_____


MODIFICATION AGREEMENT          *(page 6 of 6 pages)*

This page intentionally left blank

**Separator page - Please place with Sales Order.**

JEFFERY OKERMAN
C/O PAULA M BARBARUOLO
12 CORNELL ROAD
LATHAM NY 12110-1407